IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK ALLEN CROW, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| V. | ) | No. 3:16-cv-1675-K |
| | ) | (No. 3:12-cr-105-K-1) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Movant Mark Allen Crow, a federal prisoner, filed, through counsel, a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See* Dkt. No. 1. The government responded, *see* Dkt. Nos. 10, 11, & 17, and Crow filed reply briefs, *see* Dkt. Nos. 16 & 30.

The Court now **DENIES** the Section 2255 motion for these reasons.

Crow pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). And, under the Armed Career Criminal Act (the "ACCA"), he was sentenced, on November 12, 2014, to the statutory minimum of 180 months of imprisonment. *See United States v. Crow*, No. 3:12-cr-105-K(1) (N.D. Tex.).

He now collaterally challenges the applicability of the ACCA to his sentence under *Johnson v. United States*, 135 S. Ct. 2551 (2015).

As recounted in that decision,

Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and

> receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1); *Curtis Johnson v. United States*, 559 U.S. 133, 136 (2010). The Act defines "violent felony" as follows:
>
>> "any crime punishable by imprisonment for a term exceeding one year … that –
>>
>> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> "(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis added).
>
> The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

135 S. Ct. at 2555-56 (citation modified).

In *Johnson*, the United States Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 2563. The decision thus "affected the reach of the [ACCA] rather than the judicial procedures by which the statute is applied" and therefore is "a substantive decision and so has retroactive effect under *Teague[ v. Lane*, 489 U.S. 288 (1989),]* in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). But *Johnson* did "not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." 135 S. Ct. at 2563.

A *Johnson* claim under Section 2255 thus requires that a movant show that his constitutional right to due process was violated—or that he was sentenced in excess of

the maximum authorized by law (for example, that he received a minimum sentence of 15 years under Section 924(e), as opposed to a maximum sentence of 10 years under Section 924(a)(2))—because he was sentenced under the ACCA's residual clause. And the United States Court of Appeals for the Fifth Circuit, "join[ing] the majority of [its] sister circuits," has held that a court "must look to the law at the time of sentencing to determine whether a sentence was imposed" in violation of *Johnson*—that is, it was imposed under the ACCA's residual clause, as opposed to its enumerated offense clause or its force clause. *United States v. Wiese*, 896 F.3d 720, 724 (5th Cir. 2018) (collecting cases); *see also id.* at 725 (noting that, "[i]n determining potential reliance on the residual clause by the sentencing court," a reviewing court "may look to (1) the sentencing record for direct evidence of a sentence, and (2) the relevant background legal environment that existed at the time of the defendant's sentencing and the presentence report ('PSR') and other relevant materials before the district court" (citations, internal quotation marks, and brackets omitted)).

Applicability of the ACCA to Crow's federal sentence turns on three of his prior Texas convictions—two for burglary of a building and one for sexual assault. *See Crow*, No. 3:12-cr-105-K(1), Dkt. No. 58-1 (PSR), ¶¶ 41, 46, 47, 59; *see also* Dkt. No. 11 (relevant charging documents, written plea agreements, judicial confessions, and criminal judgments).

Taking first the burglary predicates, to show that *Johnson* applies, Crow must demonstrate that Texas burglary is broader in scope than the burglary offense

3

enumerated in the ACCA. That was an open question following *Johnson* until recently. As a panel of the Fifth Circuit recounted in *Wiese*,

> in 2003, when Wiese was convicted of being a felon in possession, all of [Texas Penal Code] § 30.02(a) was considered generic burglary under the enumerated offenses clause of ACCA. *See United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992); *see also United States v. Stone*, 72 F. App'x 149, 150 (5th Cir. 2003) (per curiam) (citing *Silva*, 957 F.2d at 161-62). That we held five years later that § 30.02(a)(3) is not generic burglary, *United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008) (per curiam), or that we held earlier this year that § 30.02(a) is indivisible, *[United States v. Herrold*, 883 F.3d 517, 529 (5th Cir. 2018) (en banc)], is of no consequence to determining the mindset of a sentencing judge in 2003. Indeed, *Herrold*'s state law analysis that undergirded the divisibility determination was largely based upon a Texas Court of Appeals case decided five years after the sentencing in this case. *See Herrold*, 883 F.3d at 523, 525 (citing *Martinez v. State*, 269 S.W.3d 777 (Tex. App. – Austin 2008, no pet.)). Thus, at the time of sentencing, there was absolutely nothing to put the residual clause on the sentencing court's radar in this case.

*Id.* at 725; *see also United States v. Hernandez*, 779 F. App'x 195, 200 (5th Cir. 2019) (per curiam) ("[T]he demonstrated trend before *Constante* was to treat all of Texas Penal Code § 30.02(a) as generic burglary." (footnote omitted)).

But, even if the residual clause was on this Court's radar when it sentenced Crow in 2014, it is clear now that Crow cannot show prejudice—and thus prevail—on a *Johnson* claim based on Texas burglary. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding); *see, e.g., Monroe v. United States*, No. 3:16-cv-1693-G-BK, 2019 WL 1930139, at *3 (N.D. Tex. Apr. 9, 2019) ("[E]ven if the sentencing Court had relied on the ACCA's residual clause—thus implicating *Johnson*—Monroe cannot

4

demonstrate prejudice because as the law currently stands, his two Texas aggravated assault convictions are still viewed as crimes of violence under the force clause." (citations omitted)), *rec. adopted*, 2019 WL 358509, at *1 (N.D. Tex. Jan. 29, 2019); *Van Cannon v. United States*, 890 F.3d 656, 661-62 (7th Cir. 2018) (where "[t]he government confessed the *Johnson* error," "[t]he only remaining dispute concerned the question of prejudice," and during that dispute, a movant is "entitled to show that under current caselaw, one or more of [his] remaining predicates could not be counted" (citation omitted)); *Garcia-Hernandez v. United States*, 915 F.3d 558, 560 (8th Cir. 2019) ("Garcia-Hernandez has at least three qualifying convictions under current law. Resentencing would not change his ACCA enhancement, so any *Johnson* error was harmless." (citations omitted)).

Last term, the Supreme Court handed down two ACCA-enumerated burglary decisions—*United States v. Stitt*, 139 S. Ct. 399 (2018), and *Quarles v. United States*, 139 S. Ct. 1872 (2019)—and, in light of the latter, the Supreme Court vacated, remanding for further consideration, the Fifth Circuit's initial en banc decision in *Herrold*, which held that the Texas burglary statute was indivisible (and thus a conviction under the statute is not the same as a generic burglary conviction as enumerated in the ACCA). And "[o]n remand, the Fifth Circuit, citing *Quarles* and *Stitt*, held Texas's burglary statute under section 30.02(a) is indivisible and falls within the definition of generic burglary under the ACCA." *Montena v. United States*, Nos. 3:16-cv-1839-M-BT & 3:10-cr-353-M-BT, 2019 WL 6830435, at *2 (N.D. Tex. Nov. 15,

5

2019) (citing *United States v. Herrold*, 941 F.3d 173 (5th Cir. 2019) (en banc)); *see Herrold*, 941 F.3d at 182 ("Before *Quarles* and *Stitt*, we held that the Texas burglary statute is nongeneric 'because it criminalizes entry and subsequent intent formation rather than entry *with* intent to commit a crime.' Herrold's old arguments no longer avail and his new ones lack merit. We hold that Section 30.02(a)(3) is generic—and Herrold's three prior felonies are therefore qualifying predicates for a sentence enhancement under the ACCA." (footnote omitted)).

Turning to the sexual-assault predicate, when Crow was convicted of Texas sexual assault in 2000, the statute provided in part:

> (a) A person commits an offense if the person:
>> (1) intentionally or knowingly:
>>> (A) causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent;
>>>
>>> (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or
>>>
>>> (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or
>>
>> (2) intentionally or knowingly:
>>> (A) causes the penetration of the anus or female sexual organ of a child by any means;
>>>
>>> (B) causes the penetration of the mouth of a child by the sexual organ of the actor;
>>>
>>> (C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
>>>
>>> (D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or
>>>
>>> (E) causes the mouth of a child to contact the anus or sexual organ

of another person, including the actor.

(b) A sexual assault under Subsection (a)(1) is without the consent of the other person if:

(1) the actor compels the other person to submit or participate by the use of physical force or violence;

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;

(3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;

(4) the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it;

(5) the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring;

(6) the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge;

(7) the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat;

(8) the actor is a public servant who coerces the other person to submit or participate;

(9) the actor is a mental health services provider or a health care services provider who causes the other person, who is a patient or former patient of the actor, to submit or participate by exploiting the other person's emotional dependency on the actor; or

(10) the actor is a clergyman who causes the other person to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as spiritual adviser.

TEX. PENAL CODE § 22.011 (2000).

The Court was unable to locate controlling authority on whether Texas sexual

assault "has as an element the use, attempted use, or threatened use of physical force against the person of another." Section 924(e)(2)(B)(i).

The Court therefore begins by analyzing the statute to determine whether it is "divisible." If it is, the Court "may consider whether the alternative crimes described in the statute are separately" violent felonies. *United States v. Herrera-Serrano*, 703 F. App'x 342, 344 (5th Cir. 2017) (per curiam); *see United States v. Torres*, 923 F.3d 420, 424 (5th Cir. 2019) ("[T]he statute governing the prior conviction 'may list different elements in the alternative, and thereby define multiple crimes'; that is a 'divisible' statute." (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016))).

> When that is the case, a special approach is needed. The "[district] court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." This use of a limited set of documents to ascertain the precise elements of conviction is known as the modified categorical approach.

*Torres*, 923 F.3d at 424 (quoting *Mathis*, 136 S. Ct. at 2249).

Texas's sexual assault statute is divisible. That is, its subsections identify "different offenses," as opposed to "different means to commit one offense." *Id.* at 425 (citing *Mathis*, 136 S. Ct. at 2256). This conclusion is supported by simply looking at the statutory language. *Cf. id.* (examining Texas's assault statute: "In summary, one subsection requires that bodily injury be caused, another that it merely be threatened, and another that offensive or provocative physical contact be caused. We are convinced these are independent groups of elements for committing multiple crimes.").

And the Court's conclusion is further supported by Texas caselaw.

To begin, another judge of this Court recently analyzed Texas's similarly structured aggravated sexual assault statute. *See generally Salinas v. United States*, No. 3:17-cv-1864-N-BT, 2018 WL 6933150, at *7-*8 (N.D. Tex. Nov. 29, 2018), *rec. accepted*, 2019 WL 112611 (N.D. Tex. Jan. 4, 2019).

> Because Texas's aggravated sexual assault statute is "alternatively phrased, comprised of a list of several disjunctive subsections," the Court "must determine whether the statute sets forth alternative means of committing a single substantive crime, or separate elements, effectively defining distinct offenses."
>
> "This threshold inquiry—elements or means?—is easy in this case." *Mathis*, 136 S. Ct. at 2256. "[A] state court decision definitively answers the question...." *Id.* At the very least, § 22.021 defines two sets of crimes: (1) sexual assault against a child victim who is under the age of 14 and (2) sexual assault against an adult victim without his or her consent. *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) ("[T]he Legislature intended that each separately described conduct"—that is, § 22.021(a)(1)(B)(i)-(iv)—"constitutes a separate statutory offense."); *Jourdan v. State*, 428 S.W.3d 86, 95 (Tex. Crim. App. 2014) (recognizing that the portion of § 22.021 at issue in *Vick*, which criminalizes sexual assault against a victim under 14, "disjunctively spec[ified] different types of conduct," while the portion of § 22.021 at issue in *Jourdan*, which criminalizes sexual assault against an adult victim without his or her consent, "simply proscribe[d] the same type of conduct ... perpetrated by any means.") (citation and internal quotation marks omitted).

*Id.* at *7 (citation omitted).

So too does Section 22.011. *Compare* TEX. PENAL CODE § 22.011(a)(1), *with id.* § 22.011(a)(2). And, relying on Texas authority—particularly *Vick*—there is no principled reason to reach a result different than reached in *Salinas* as to the sexual assault statute. *See Aekins v. State*, 447 S.W.3d 270, 279 (Tex. Crim. App. 2014) (footnote omitted) ("Sexual Assault under subsection 22.011(a)(1)(A) criminalizes two

9

separate acts—penetrating by any means (1) the anus, or (2) the sexual organ. Jury unanimity is required for these distinct acts, but it is *not* required for the different means of committing a single distinct act (e.g., penetrating the anus with the defendant's finger, mouth, or sexual organ)." (footnote omitted)); *see also, e.g., Tyson v. State*, 172 S.W.3d 172, 178 (Tex. App.—Fort Worth 2005, pet. ref'd) ("[T]he acts in section 22.011(a)(2) are described in separate sections, which are separated by the word 'or,' the same as the acts in section 22.021(a)(1)(B). Thus, we conclude that the different types of conduct described in section 22.011(a)(2) constitute separate offenses even if the different types of conduct occur in the same transaction except in cases in which one of the acts would necessarily be subsumed by another ...." (citations omitted)); *cf. Hendrix v. State*, 150 S.W.3d 839, 860 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (Hudson, J., concurring) ("Every reason recited in *Vick* for interpreting Sections 22.011 and 22.021 as containing distinct offenses is equally true of ... many other offenses in the Penal Code too numerous to mention here. However, in every other instance, outside of sexual assault, these statutory descriptions have been interpreted as various manner and means by which the offense may be committed, not a list of separate and specific offenses.").

"Because the [Texas sexual assault statute] defines multiple crimes, it is divisible. Thus, the Court must use the modified categorical approach to 'isolate the alternative under which the defendant was convicted and apply the federal template to only that alternative.'" *Salinas*, 2018 WL 6933150, at *8 (citations omitted)). As such,

10

the Court turns to the PSR's description of the sexual assault committed by Crow—the description of that crime that was before the Court when it sentenced Crow in 2014:

> According to the Indictment, on or about September 5, 2000, the defendant did intentionally and knowingly cause the penetration of the female sexual organ of [the victim], without the consent of [the victim], by means of the sexual organ of the defendant, and in the course of the criminal episode, and by acts and words, the defendant did place [the victim] in fear that death, serious bodily injury, and kidnapping would be imminently inflicted on [the victim], and further the defendant, by acts and words occurring in the presence of [the victim], did threaten to cause the death, serious bodily injury, and kidnapping of [the victim].

*Crow*, No. 3:12-cr-105-K(1), Dkt. No. 58-1 (PSR), ¶ 59.

This description of the sexual assault committed by Crow reflects that his violation of the statute involved forceful conduct consistent with Section 924(e)(2)(B)(i), considering which the Supreme Court held, in 2010—before Crow's sentencing in this Court—that, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140 (citation omitted; italics in original); *cf. United States v. Shaw*, 154 F. App'x 416, 417-18 (5th Cir. 2005) (per curiam) ("Under our precedent, because some methods of violating section 22.011 do not require the use of physical force against the victim and, because Shaw's indictment is not specific enough to rule out conviction for such non-forceful conduct, we cannot affirm Shaw's crime-of-violence sentence enhancement under the force-as-an-element inquiry.").

11

As such, looking to the law in place when Crow was sentenced—particularly the *Curtis Johnson* definition of "physical force"—Crow has not shown by a preponderance of the evidence, *see Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980); *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982); *United States v. Clay*, 921 F.3d 550, 559 (5th Cir. 2019), that the Court relied on the residual clause to find that his Texas sexual assault conviction qualified as an ACCA predicate.

Further, even if Crow could show by a preponderance of the evidence that the Court did rely on the residual clause in 2014, under current law in this circuit, Texas sexual assault is a violent felony under the ACCA's force clause. For example, the *Curtis Johnson* definition of "physical force" was reaffirmed by the Supreme Court last term, in *Stokeling v. United States*, 139 S. Ct. 544 (2019). *See, e.g., United States v. Burris*, 920 F.3d 942, 954 (5th Cir. 2019) ("The *[Stokeling]* Court went on to explain that under *Curtis Johnson*'s definition of 'physical force,' the force used need not be 'substantial' and the 'altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself "capable of causing physical pain or injury."' Focusing on *[Curtis] Johnson*'s use of the word 'capable' of causing physical pain or injury, *Stokeling* held that the 'physical force' under the ACCA does not require 'any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality.'" (quoting *Stokeling,* 139 S. Ct. at 553, 554)). As such, Crow would be unable to show prejudice to prevail on a *Johnson* claim. *See Brecht v. Abrahamson*, 507 U.S. at 638 (1993); *Chavez*, 193 F.3d at 379.

### Conclusion

The Court **DENIES** Movant Mark Allen Crow's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

**SO ORDERED.**

Signed March 30th, 2020.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE